IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOTAL E&P USA, INC., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-16-2671 | |
| § | | |
| MARUBENI OIL & GAS USA, INC., § | | |
| Defendant. § | | |

## MEMORANDUM AND ORDER

This case is before the Court on the "Motion in Limine As to Issues Identified in Total's Advisory Notice"[1] ("Motion in Limine") [Doc. # 191] filed by Defendant Marubeni Oil & Gas USA, Inc. ("MOGUS"), to which Total E&P USA, Inc. ("Total") filed a Response [Doc. # 195], and MOGUS filed a Reply [Doc. # 201]. Also pending is MOGUS's separate Supplemental Motion in Limine to Exclude Expert Testimony ("Supplemental Motion") [Doc. # 193], to which Total filed a Response [Doc. # 196], and MOGUS filed a Reply [Doc. # 202].

The Court has reviewed the record, including the ruling on motions for summary judgment, *see* Memorandum and Order [Doc. # 181], entered August 24, 2018, adopting Magistrate Judge Dena Palermo's Report and Recommendation [Doc. # 163], and the Court's Memorandum and Order [Doc. # 182] ruling on prior motions

---

[1] Referring to the Advisory Notice Concerning Scope of Issues for Damages Trial [Doc. # 187].

in limine regarding Total's proposed expert witnesses. Based on that review of the record and consideration of the applicable legal authorities, the Court issues the following rulings on the pending motions in limine.

I.  **BACKGROUND**

Total is a corporation engaged in the oil and gas industry. Prior to July 1, 2006, Total owned an undivided 25.834% interest in the Canyon Express Pipeline System ("CEPS") on the Outer Continental Shelf ("OCS"). The management and operation of the CEPS was governed by the CEPS Operating Agreement executed by the CEPS owners on June 1, 2000.

On July 1, 2006, Total assigned all its rights in the CEPS to ATP Oil & Gas Corporation ("ATP"). In August 2012, ATP filed a petition pursuant to Chapter 11 of the United States Bankruptcy Code. In February 2014, United States Bankruptcy Judge Marvin Isgur entered a Final Order approving the sale of ATP's interest in the CEPS to MOGUS. In connection with the resolution of ATP's bankruptcy proceeding, an overriding royalty interest ("ORRI") in an oil and gas field referred to as Mississippi Canyon Block 348 ("MC 348") from Bennu Oil & Gas LLC ("Bennu") was divided equally between MOGUS and an Abandonment Fund. Any Abandonment Fund proceeds would be used to offset any decommissioning costs attributable to ATP's obligation for those decommissioning costs.

Eventually, the Bureau of Safety and Environmental Enforcement ("BSEE") and the Bureau of Ocean Energy Management ("BOEM") required MOGUS to decommission the CEPS. The BSEE's regulations required MOGUS to flush the pipeline and fill the pipeline with seawater. *See* 30 C.F.R. § 250.1751. To comply with this regulation, MOGUS needed to conduct hydrate remediation.[2] MOGUS complied with the decommissioning requirements, and sought contribution from Total for its share of the abandonment/decommissioning costs.

Total filed this lawsuit seeking a declaratory judgment that it has no legal obligation to reimburse MOGUS for the decommissioning costs. The Court granted summary judgment in favor of MOGUS and against Total, rejecting Total's arguments (1) that it had no liability for its share of the decommissioning costs and (2) that, in any event, ATP in the settlement of the bankruptcy proceeding fully satisfied any obligation Total may have for a share of the costs. *See* Memorandum and Order [Doc. # 181], adopting Magistrate Judge Dena Palermo's Report and Recommendation [Doc. # 163]. Additionally, the Court held that certain expert testimony offered by

---

[2] The parties agree that hydrates occur when water and hydrocarbons combine to form ice crystals. Formation of hydrates is a function of temperature and pressure. In deepwater gas fields, hydrates are a concern because they can compromise flow within a pipeline system. *See* Total's Response to Motion in Limine [Doc. # 107], pp. 3-4 (citing Dallas Davis Report, Exh. A to Response, p. 8).

Total and challenged by MOGUS is not relevant to any issue remaining in the case. *See* Memorandum and Order [Doc. # 182], entered August 28, 2018.

Subsequently, at the Court's direction, Total filed an "Advisory Notice Concerning Scope of Issues for Damages Trial" ("Advisory") [Doc. # 187], identifying issues on which it wanted to introduce expert testimony or other evidence at trial.[3] In response, with leave of Court, MOGUS filed its Motion in Limine. MOGUS also filed its Supplemental Motion, addressing issues that were the subject of the Court's August 28, 2018 Memorandum and Order regarding Total's experts.[4] The pending motions have been fully briefed and are now ripe for decision.

## II. APPLICABLE LEGAL STANDARDS FOR EXPERT TESTIMONY

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. FED. R. EVID. 702; *see, e.g., Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529

---

[3] One of the issues addressed in the Advisory is whether MOGUS can seek at this stage to recover Total's proportionate share of any future costs of decommissioning required by federal regulators. *See* Advisory, p. 5. MOGUS has advised that, although the Court's ruling in this case establishes Total's liability for its share of abandonment costs, MOGUS "is not seeking at trial any costs that have not yet been incurred. If and when such costs are incurred, MOGUS will issue invoices to Total in the usual course." *See* Reply [Doc. # 201], p. 24.

[4] Total has advised that it no longer intends to offer testimony from Kirk Wardlaw and Gerald Schiff.

(5th Cir. 2015); *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). To be admissible, an expert's proffered testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).

"The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, . . . but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown*, 801 F.3d at 529; *Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92). "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (citing *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson*, 822 F.3d at 199.

"Reliability" requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology. *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013). The objective of the Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

### III. ANALYSIS

#### A. Dallas Davis

The Court previously ruled on the admissibility of Dallas Davis's testimony. Davis is a mechanical engineer specializing in offshore oil and gas operations. MOGUS's current motion focuses on Davis's opinion that Total is not liable for decommissioning costs attributable to hydrate remediation during decommissioning.

The Court has held that Total is legally obligated to pay its proportionate share of the decommissioning costs of the CEPS. The CEPS Operating Agreement ("OA") requires MOGUS to conduct the abandonment of the CEPS "as required by law and any governmental authority . . . ." *See* CEPS OA [Doc. # 92-4], ECF p. 54; *see also id.* at ECF p. 81 (Operator shall charge the Joint Account for "Costs incurred for abandonment and reclamation of the Common System, including costs required by governmental or other regulatory authority."). The BSEE regulations define "decommissioning" as "returning the lease or pipeline right-of-way to a condition that meets the requirements of regulations of BSEE and other agencies that have jurisdiction over decommissioning activities." *See* 30 C.F.R. § 250.1700(a)(2). The BSEE regulations required MOGUS to flush the pipeline and fill the pipeline with

seawater. *See* 30 C.F.R. § 250.1751. It is undisputed that, to comply with this regulation, MOGUS needed to conduct hydrate remediation. *See, e.g.,* Deposition of David Barton [Doc. # 191-3], p. 183; Expert Response Report of Dallas Davis [Doc. # 191-7], ECF p. 62 ("As explained in both of my reports, MOGUS had to perform hydrate remediation to prepare the CEPS for decommissioning."). Because governmental authorities, through regulation, required the pipeline to be flushed and filled with seawater, which required the hydrate remediation, as part of the abandonment and decommissioning operations, the costs for the hydrate remediation are decommissioning costs under the CEPS OA. Davis's opinions that Total is not liable for the cost of hydrate remediation because it was not part of the decommissioning costs are contrary to the unambiguous language of the parties' contract and, therefore, are excluded. Additionally, the opinions relate to Total's liability, an issue that has been decided by the Court on summary judgment.

### B. Scott Sewell

Sewell served as the National Director of the Mineral Management Service, the predecessor of the BSEE and the BOEM. He has worked in the offshore energy industry for more than twenty-five years. He served for twenty years on the National Petroleum Council, an advisory council to the Secretary of Energy. The pending motion challenges Total's offer of Sewell's opinion that Total is not legally obligated

to pay its proportionate share of decommissioning costs because in 2010, when ATP began having financial difficulties, MOGUS should have asked BOEM to require ATP to provide supplemental bonding to cover later decommissioning costs.[5]

Sewell's opinions are not relevant because any duty to mitigate damages arises under Alabama law "subsequent to the wrongful act of the defendant." *See Equilease Corp. v. McKinney*, 289 So. 809, 812 (Ala. Civ. App. 1974). Here, Total's wrongful act occurred in 2016 when it refused to pay its proportionate share of decommissioning costs. Total argues that MOGUS should have asked BOEM to require supplemental bonding from ATP in 2010. Under Alabama law, MOGUS was not required to mitigate damages in 2010, which was well before Total's 2016 refusal to pay its share of decommissioning costs. Because Sewell's testimony on this issue is not relevant, it is excluded.

### C. Michael W. Cougevan

Total offers expert opinions from Cougevan on accounting and auditing issues, and MOGUS does not object to Cougevan offering those accounting opinions.

---

[5] The holder of a right-of-way must provide "additional security if the [BOEM] Regional Director determines that a bond in excess of $300,000 is needed." 30 C.F.R. § 550.1011(a)(2). It appears that ATP qualified for a supplemental bonding waiver until July 31, 2012, approximately one month before it filed bankruptcy. *See* August 17, 2012 BOEM Letter, Exh. P to Motion in Limine ("on July 31, 2012, BOEM informed ATP that its review of ATP's current audited financial information demonstrates that ATP no longer qualifies for a supplemental bonding waiver").

MOGUS objects in the current motion in limine to Cougevan's opinions relating to "routine and ongoing expenses incurred to maintain and operate CEPS, including expenses related to Williams Field Services ("Williams"). MOGUS argues that Cougevan's opinion on this issue is an improper legal conclusion regarding the proper interpretation of the governing contracts between MOGUS and Williams. It is undisputed that the two relevant agreements between MOGUS and Williams are the Memorandum of Understanding dated January 22, 2014, and the Canyon Express Pipeline Operations Service Agreement ("Service Agreement") dated July 1, 2014.[6] These agreements were entered into to support the CEPS decommissioning activities and to comply with mandates by the BSEE. *See* Declaration of Robert Spang [Doc. # 201-1], ¶ 10. According to Spang, "MOGUS would not have entered into these agreements if it was not undertaking CEPS decommissioning activities made the subject of this lawsuit." *Id.* There is no evidence to the contrary.

Under the two agreements, Williams was required to allow MOGUS to access Canyon Station in order to conduct activities "required for satisfaction of the Decommissioning Obligations." *See* Memorandum of Understanding [Doc. # 191-

---

[6] The Memorandum of Understanding references a prior agreement between MOGUS and Williams (and others), the "Canyon Express Pipeline System Production Handling Agreement," which covers production handling services provided by Williams at its Canyon Station production handling platform. *See* Memorandum of Understanding, p. 1. It appears that MOGUS is not attempting to include costs incurred under this Agreement as decommissioning costs.

12], ¶ 4(c); *see also* Service Agreement [Doc. # 191-13], p. 4 (Williams allows access to and use of Canyon Station, including the boat docking facilities and helicopter pad to the extent necessary to "satisfy all obligations for plugging and abandonment, removal, site clearance and/or decommissioning"). Indeed, the Service Agreement provides specifically that "Williams will not provide production handling services through Canyon Station."[7] *See* Service Agreement, ¶ 1.1(C).

Cougevan's proffered opinions regarding the meaning of the Memorandum of Understanding and the Service Agreement constitute improper legal conclusions. *See, e.g., Dickson v. Sklarco L.L.C.*, 2014 WL 4443423, *5 (W.D. La. Sept. 9, 2014); *Lind v. Int'l Paper Co.*, 2014 WL 11332304, *3 (W.D. Tex. Mar. 12, 2014); *see also Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) (holding that district court erred in allowing an expert to opine on the proper interpretation of a contract because it infringed on the judge's "exclusive province . . . to instruct the jury on the law"). On this basis, these opinions are excluded.

### D. Bennu ORRI

As an issue identified in the Advisory, but not tied to a specific expert witness, Total argues alternatively that (1) MOGUS should have mitigated its damages by

---

[7] Williams was required to provide production handling services pursuant to the separate "Canyon Express Pipeline System Production Handling Agreement" referenced above in footnote 6. As noted, MOGUS does not claim that the production handling services provided pursuant to that agreement are recoverable decommissioning costs.

selling the Bennu ORRI, (2) the receipt of the Bennu ORRI constituted a partial satisfaction of MOGUS's claimed damages in this case, and (3) the Abandonment Fund should serve to reduce the damages MOGUS seeks from Total.[8]  *See* Advisory, p. 3.  In its Response to MOGUS's Motion in Limine, Total characterizes its argument as one seeking an offset for the value of the Bennu ORRI.  *See* Response [Doc. # 195], p. 9.

During the summary judgment phase of this lawsuit, Total argued that the value of the Bennu ORRI was $381 million, which exceeded MOGUS's decommissioning costs and constituted full satisfaction of ATP's (and therefore Total's) contractual obligations.  The Magistrate Judge rejected Total's argument that the Bennu ORRI constituted a satisfaction, holding that Total had failed to present evidence to support its valuation of the Bennu ORRI, which the Magistrate Judge held was "too speculative."  *See* Report and Recommendation, p. 30.  The Magistrate Judge

---

[8] MOGUS has represented to the Court, and the Court accepts MOGUS's representation, that if the Bennu ORRI were to generate proceeds in the future, "half of those proceeds would be provided to the Abandonment Fund and a credit would be proportionally applied to offset each predecessors' share of liability."  *See* MOGUS Reply in Support of Motion for Partial Summary Judgment on Liability [Doc. # 127], p. 2 n.3; *see also* Reply in Support of Motion in Limine [Doc. # 201], p. 2 ("if the Bennu ORRI ever does generate revenue, the abandonment fund portion of those proceeds will reduce Total's liability").  Because the Bennu ORRI has not yet generated revenue, Total's argument regarding the Abandonment Fund is premature.

determined that MOGUS's valuation of the Bennu ORRI was based on "assumptions, speculation, and 'hope.'" *See id.* at 31. The Magistrate Judge stated that:

> In the damages context, "[o]ne of the fundamental rules of damages is that to be compensable they must be direct and reasonably certain, not remote and speculative." *Deng v. Scroggins*, 169 So. 3d 1015, 1026 (Ala. 2014) (quoting *Alabama Power Co. v. Alabama Public Serv. Comm'n*, 267 Ala. 474, 478 (1958)). As applied here, whether the ORRI will ever yield income is not "reasonably certain," and the possibility that it will yield income in the future is too "remote" to establish the actual value of the ORRI is $381 million.

*Id.* at 32-33. Therefore, the Magistrate Judge concluded that Total failed to meet its burden to show the value of the Bennu ORRI. *See id.* at 33.

This Court overruled Total's Objections to the Magistrate Judge's Report and Recommendation, noting that "Total had a full and fair opportunity to present evidence on this issue to the Magistrate Judge, but presented only evidence that was highly speculative and insufficient to raise a genuine issue of material fact to be submitted to a jury." *See* Memorandum and Order [Doc. # 181], p. 4.

The Magistrate Judge and this Court rejected Total's argument regarding satisfaction by the Bennu ORRI, and Total cannot avoid the prior rulings by the Magistrate Judge and this Court by simply recharacterizing its satisfaction argument as one for mitigation or offset. The Magistrate Judge specifically addressed the valuation issue in the context of damages. *See* Report and Recommendation, p. 32 ("In the damages context . . ."). The prior rulings regarding the speculative nature of

any attempt to assign value to the Bennu ORRI apply equally to any mitigation or offset argument. Indeed, it is undisputed that, to date, the Bennu ORRI has not produced revenue. Consequently, there is no identifiable value to apply in mitigation or offset.[9] Evidence regarding the Bennu ORRI is excluded.

### E. Sale of the CEPS to Shell

In the Advisory, Total asserts that "MOGUS could have avoided all of the costs associated with abandoning CEPS by conveying it to Shell." *See* Advisory, p. 3. Initially, it is highly speculative whether negotiations with Shell which ended in 2013 could have resulted in the sale of the CEPS to Shell, and whether that sale would have "avoided all of the costs associated with abandoning CEPS." Moreover, as discussed above in connection with Sewell's opinions regarding supplemental bonding by ATP, opinions regarding the sale of CEPS to Shell are not relevant because any duty to mitigate damages arises under Alabama law "subsequent to the wrongful act of the defendant." *See Equilease Corp. v. McKinney*, 289 So. 809, 812 (Ala. Civ. App. 1974). MOGUS was not required to mitigate damages in 2013 by selling the CEPS to Shell, well before Total's 2016 refusal to pay its share of decommissioning costs. On each of these bases, evidence regarding any potential sale of the CEPS to Shell is excluded.

---

[9]  The Court notes also that Total has not asserted a claim for offset in this lawsuit.

## IV. CONCLUSION AND ORDER

As explained above, the proposed expert testimony challenged by MOGUS in the Supplemental Motion is not relevant to any issue remaining in this lawsuit. Additionally, evidence regarding the Bennu ORRI and the prior negotiation for a sale of the CEPS to Shell is excluded and will not be presented to the jury at trial. Therefore, it is hereby

**ORDERED** that the Motion in Limine [Doc. # 191] and the Supplemental Motion [Doc. # 193] are **GRANTED IN PART AND DENIED IN PART** as explained herein.

SIGNED at Houston, Texas, this **6th** day of **December, 2018**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE